UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| SHERRY WILKERSON, Administrator of ) <br> The Estate of Raupheal Thomas, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> CITY OF AKRON, OHIO, et al. ) <br> ) <br> Defendant. ) | CASE NO. 5:15CV2266 <br><br> JUDGE JOHN R. ADAMS <br><br><br> **MEMORANDUM OF OPINION** |

This matter comes before the Court on a motion for summary judgment filed by Defendants City of Akron, Ohio, James Nice, Joseph Danzy, and Edward Stewart ("Defendants"). For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part.

**I. Facts & Procedure**

Slightly after 5 p.m. on November 3, 2014, Raupheal Thomas and Jesse Gray were riding in Tina Holman's vehicle. Holman's vehicle suffered a flat tire on Orlando Avenue near Orrin Street. Thomas and Gray waited on the sidewalk on Orlando Avenue while Ms. Holman drove the vehicle to a nearby gas station. At approximately 5:16 p.m., off-duty Akron Police Officer Howard Vaughn called Akron Police and requested a unit to respond to Thomas and Gray stating, "I don't

know if they're casing or what." At the time of the call, Vaughn was in the neighborhood where he lived and was aware of several recent break-ins that had occurred nearby. Akron Police Officer Joseph Danzy responded to the call followed shortly later by Officer Edward Stewart.

Dash camera footage captured a large portion of the interaction between Thomas and Gray and the officers. Within seconds of Officer Danzy speaking to Thomas, Thomas turned and began to move toward the sidewalk. Plaintiff Sherry Wilkerson, representing Thomas' estate, contends that Thomas' movements at the time were innocent and casual, however Defendants contend that Thomas' movements were abrupt and constituted Thomas taking a "bladed stance." Officer Danzy summoned Thomas back to the cruiser, ordered him take his hands out of his pockets, and ordered him to place his hands on the cruiser. Officer Danzy then initiated a pat-down. Officer Stewart assisted in placing Thomas' left wrist on the cruiser. Once Officer Danzy and Officer Stewart were holding Thomas, Thomas began to struggle. Officer Danzy attempted to utilize his Taser to no effect and Thomas, Officer Danzy, and Officer Stewart ended up fighting on the grass between the road and the sidewalk. While the exact nature of the fight is disputed, it is undisputed that at some point during the fight Thomas drew a .25 caliber handgun and fired.

Thomas managed to break free of Officer Danzy and Officer Stewart and ran back into the view of the dash camera. Thomas ran across the view of the camera, followed by Officer Danzy, who fired two rounds from his service weapon. One round entered Thomas' right rear flank and the other passed through his liver, diaphragm, pericardial sac, and the right atrium of the heart. Thomas then collapsed to the ground next to his gun.

Officer Danzy and Officer Stewart then cuffed Thomas behind his back and Officer Danzy called for an ambulance. Officer Stewart requested that the ambulance "step it up." Neither officer provided further medical aid. EMS reported "[d]elay on the scene; parking down the street from

victim" and "delay trying to remove handcuffs from patient." Plaintiff contends that EMS parked down the street from the victim because of responding officers attempting to secure the scene. Deposition testimony provided by both sides stated that the handcuff delay arose from mechanical issues regarding the handcuff key interfacing with the handcuffs. Thomas died at 5:55 p.m.

On November 3, 2015, Plaintiff filed this action in this court. Plaintiff asserted claims under 42 U.S.C. § 1983 for unconstitutional search and seizure, excessive force, and unconstitutional deprivation of serious medical needs under the Fourth and/or Fourteenth Amendments. Plaintiff also asserted § 1983 claims against the City of Akron and James Nice as Chief of the City of Akron Division of Police for failure to train and/or supervise law enforcement, for promulgating customs, policies, and/or practices which proximately caused the violation of Thomas' rights, and for ratifying the conduct of Officer Danzy and Officer Stewart. Plaintiff also raised claims of assault and battery, intentional infliction of emotional distress, and wrongful death under Ohio law.

## II. Legal Standard

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. at 323. This is so that summary judgment can be used to dispose of claims and defenses which are factually unsupported. *Id.* at 324. The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. *Id.* The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial - whether, in other words,

there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250.

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. at 324. The nonmoving party must oppose a proper summary judgment motion "by any kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves ..." *Id.* Rule 56(c) states, "... [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." A scintilla of evidence in favor of the nonmoving party is not sufficient.

### III. Law and Analysis

<u>Stop and Frisk</u>

Wilkerson raises her first claim related to the stop and frisk under 42 U.S.C. § 1983, alleging a constitutional violation of Thomas' Fourth Amendment rights. To state a claim under § 1983, a plaintiff must set "forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (internal citation omitted). Neither party disputes that the Akron officers acted under color of state law. Rather, this motions challenges whether Thomas' rights were indeed violated and if so whether the officers are entitled to qualified immunity. Qualified immunity is appropriate when an official's conduct "does

not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, ––– U.S. ––––, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (internal citation omitted). The qualified immunity analysis contains two components, which courts may analyze in any order: (1) whether the plaintiff has established with the requisite proof the violation of a constitutional right, and (2) whether the particularized right at issue was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232- 236 (2009). When a defendant invokes qualified immunity in a motion for summary judgment, the plaintiff must offer sufficient evidence to create a genuine dispute of fact that the defendant violated a clearly established right. *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608–09 (6th Cir. 2015).

The Fourth Amendment states: "The right of the people to be secure in their persons... against unreasonable searches and seizures, shall not be violated..." U.S. Const. amend. IV. The Sixth Circuit has provided "a two-part analysis of the reasonableness of the stop ... We first ask whether there was a proper basis for the stop and, if the stop was proper, then we must determine whether the degree of intrusion ... was reasonably related in scope to the situation at hand." *United States v. Mays*, 643 F.3d 537, 541–42 (6th Cir. 2011) (quoting *United States v. Smith,* 594 F.3d 530, 536 (6th Cir.2010)) (internal quotations omitted). The Supreme Court has discussed the law surrounding stop and frisks on numerous occasions.

> The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Terry v. Ohio*, 392 U.S. 1, 9 (1968); *United States v. Cortez*, 449 U.S. 411, 417 (1981). Because the "balance between the public interest and the individual's right to personal security," *United States v. Brignoni–Ponce*, 422 U.S. 873, 878 (1975), tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity "'may be afoot,'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, *supra*, at 30). *See also Cortez*, 449 U.S., at 417 ("An investigatory stop must be justified by

some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.").

When discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *See, e.g., id.*, at 417–418. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." *Id.*, at 418. *See also Ornelas v. United States*, 517 U.S. 690, 699 (1996) (reviewing court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers). Although an officer's reliance on a mere "'hunch'" is insufficient to justify a stop, *Terry, supra*, at 27, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard, *Sokolow, supra*, at 7.

*United States v. Arvizu*, 534 U.S. 266, 273–74 (2002).

Both parties agree that the interaction between Officer Danzy and Thomas was a consensual encounter until the moment Officer Danzy summoned Thomas to the cruiser and ordered him to take his hands out of his pockets. At this point, the interaction became a nonconsensual stop and subject to Fourth Amendment scrutiny. Officer Danzy points to a "bladed stance" and "abrupt" movement towards the sidewalk as justification for his orders. One court has described "blading" as "pivoting so that [the subject's] body [is] perpendicular to [the officer's], a maneuver …recognized as one that officers are taught as a way to protect their sidearms from assailants." *United States v. Johnson*, 336 Fed.Appx. 554, 555 (6th Cir. 2009).

While giving due weight to Officer Danzy's observations, the Court cannot conclude that his factual assertions regarding "blading" are conclusive on the issue as to warrant summary judgment. The Court has carefully scrutinized the dash camera footage that allegedly demonstrates Thomas' nervous behavior and the "blading." The totality of these actions allegedly occur within a span of roughly 10 seconds. During that time, Thomas and Gray both point toward a gas station and reference a flat tire. That information was entirely consistent with Officer Vaughn's prior

observation that the SUV that Thomas and Gray were riding in had a flat tire. The totality of the remainder of Thomas' interaction prior to his seizure involves Thomas' having his hands in his pockets and turning to walk away from Officer Danzy. While Officer Danzy construed this movement at Thomas "blading" his body, the dash camera footage does not show Thomas turning his body perpendicular to Officer Danzy to conceal one side. Instead, Thomas turns completely away from the officer and begins to walk away.

Reviewing the totality of the circumstances, the Court cannot conclude that as a matter of law Officer Danzy had reasonable suspicion for his stop and frisk. Even allowing for the use of the collective knowledge doctrine and assuming that Officer Danzy had the same knowledge as Vaughn, Defendants cannot demonstrate reasonable suspicion that warrants summary judgment. While Vaughn notes that there were several recent break-ins in the neighborhood, there is nothing to suggest that it is a high-crime neighborhood. Moreover, Vaughn directly observed the flat tire on the SUV, providing an entirely legitimate reason for Thomas and Gray to be waiting in the neighborhood. Upon Officer Danzy's arrival, Thomas and Gray both indicated that car trouble had left them in the neighborhood. These underlying facts, coupled with Thomas' actions in having his hands in his pockets and attempting to walk away from the officers, are insufficient for this Court to say as a matter of law that reasonable suspicion existed to justify Thomas' stop and frisk by Officer Danzy.

Qualified immunity, however, protects Officer Danzy from this lawsuit unless Wilkerson can demonstrate that Officer Danzy violated Thomas' constitutional rights *and* that those rights were clearly established. *Pearson v. Callahan*, 555 U.S. 223, 321 (2009). This Court "may not call off the trial merely because an officer says he or she acted reasonably in the face of competing testimony. We instead consider the facts in the light most favorable to the plaintiff." *Greco v.*

*Livingston Cnty.*, 774 F.3d 1061, 1064 (6th Cir. 2014). As noted above, there remain competing facts in the record that preclude summary judgment on the issue of whether Thomas' constitutional rights were violated. Assuming those rights were violated, the Court finds that the rights were clearly established. Unsuspicious pedestrians remain free "to ignore the police and go about [their] business." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). And "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick*, 501 U.S. 429, 437 (1991). All of this establishes that "walking away from an officer does not create ... reasonable suspicion." *United States v. Beauchamp*, 659 F.3d 560, 570 (6th Cir. 2011); *see Brown v. Texas*, 443 U.S. 47, 52 (1979). Upon review, a reasonable juror could conclude that Thomas did nothing more than walk away from Officer Danzy- a reasonable factual conclusion that stands in direct conflict with Officer Danzy's account of events. As the record allows for this conclusion, Officer Danzy is not entitled to qualified immunity

Officer Danzy's Use of Force

Regardless of whether the *Terry* stop was constitutional, Officer Danzy's use of lethal force must be viewed separately from the circumstances leading to the use of force. *Cty. of Los Angeles, Calif. v. Mendez*, 137 S.Ct 1539, 1547 (2017) ("To the extent that a plaintiff has other Fourth Amendment claims, they should be analyzed separately."). This Court finds that all rational factfinders would hold that Officer Danzy's use of force was constitutional.

"Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and

if, where feasible, some warning has been given." *Tennessee v. Garner*, 471 U.S. 1, 11–12, (1985). "This Circuit has employed a non-exhaustive list of three factors to evaluate whether an officer's actions are reasonable: '(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.' *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 534 (6th Cir. 2006)). But the ultimate inquiry is always whether the totality of the circumstances justified the use of force." *Littlejohn v. Myers*, 684 F. App'x 563, 567 (6th Cir. 2017). With respect to deadly force, the Sixth Circuit has further explained:

> With that said, this Court has explicitly stated—regardless of the other factors—that with respect to the use of deadly force, there is a minimum requirement that the officer have "probable cause to believe that the suspect poses a threat of severe physical harm, either to the officer or others." *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005). Our analysis turns on whether Myers had probable cause to believe that Littlejohn presented a serious danger to either himself or others at the moment Myers discharged his firearm. *See Bouggess v. Mattingly*, 482 F.3d 886, 890 (6th Cir. 2007) (the relevant time for purposes of this inquiry "is the moment immediately preceding the shooting"). As a general note, the mere fact that Littlejohn was a felon fleeing from police is not sufficient to justify the use of deadly force. *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) ("It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."). On the other hand, if a suspect threatens either an officer or any other person with serious physical harm during flight, deadly force is authorized. *Dickerson*, 101 F.3d at 1163.

*Id.*

While there exists a question of fact regarding exactly how Thomas' firearm was oriented when fired, the record establishes the following undisputed facts 1) Thomas possessed a .25 caliber handgun; 2) Officer Danzy, Officer Stewart, and Thomas were involved in a physical altercation;

3) Thomas discharged his handgun while fighting with Officer Danzy and Officer Stewart; 4) and Thomas retained his handgun until he was shot by Officer Danzy.

The above facts compel a finding that deadly force was reasonable. Wilkerson attempts to manufacture a factual dispute to avoid summary judgment. Specifically, Wilkerson claims that Officer Danzy and Officer Stewart gave different accounts of the gunshot. Officer Danzy opined that the shot went into the air while he fought Thomas for the firearm. Officer Stewart believed the gunshot was muffled and had come from beneath Thomas. The Court would first note that the officers had different vantage points during the altercation with Thomas. As such, there differing accounts do not necessarily contradict one another. However, even assuming that they create a factual contradiction, the contradiction is not on an issue of *material* fact.[1] Regardless of which version of events is believed by a jury, the jury must conclude that Thomas discharged his firearm while fighting two officers. As such, deadly force was warranted. *See, supra, Dickerson*, 101 F.3d at 1163.

### Claims Against Officer Stewart for Terry Stop and Frisk and Use of Force

Officer Stewart did not conduct the Terry stop, did not initiate the frisk, and did not utilize the lethal force that Plaintiff references in the complaint. Summary judgment is GRANTED as to these claims.

### Deliberate Indifference to Medical Needs

"In a deliberate-indifference claim based on delay of medical care, a constitutional violation arises if the injury in question is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention,' and the resulting need for treatment was 'not addressed within a reasonable time frame.'" *Scozzari v. Miedzianowski*, 454 F. App'x 455, 464 (6th Cir.

---

[1] Similarly, the fact that Officer Stewart did not perceive the same level of danger as Officer Danzy has no impact on the Court's review of the facts and the law applicable to the use of deadly force

2012) (internal citations omitted). "Deliberate indifference requires that an officer (1) be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) draw the inference, and (3) act or fail to act in a manner demonstrating 'reckless or callous indifference' toward the individual's rights." *Jones v. City of Cincinnati*, 736 F.3d 688, 696 (6th Cir. 2012) (internal quotations omitted). Neither Officer Danzy nor Officer Stewart acted with deliberate indifference to Thomas' medical needs.

It is undisputed that Officer Danzy and Officer Stewart were aware that Thomas had been shot and were aware of the risk of serious harm that could follow not providing medical aid. Officer Danzy called for an ambulance and Officer Stewart requested that the ambulance "pick it up." These acts show that Officer Danzy and Officer Stewart were aware of a risk of serious harm and drew an inference between the facts of the situation and the risk.

Legally, neither Officer Danzy nor Officer Stewart acted or failed to act in a manner demonstrating reckless or callous indifference. The Sixth Circuit has also held "that the obligation to provide adequate medical care to an injured detainee is not discharged merely by promptly calling for assistance, but extends to ensuring that medical responders are able to access the victim without unreasonable delay." *Scozzari v. Miedzianowski*, 454 F. App'x 455, 466 (6th Cir. 2012). Officer Danzy promptly summoned medical help and Officer Stewart attempted to speed up medical response. Uncontroverted evidence from Officer Stewart's deposition and the EMS report both state that there was difficulty in removing the handcuffs and delay from parking down the street. However, neither Officer Danzy nor Officer Stewart refused to remove Thomas' handcuffs. No rational factfinder would be able to find that mechanical difficulty in removing handcuffs was an act demonstrating reckless or callous indifference. No rational factfinder would be able to find that either Officer Danzy or Officer Stewart were responsible for the manner in which other

responding officers parked their vehicles upon arriving at the scene. As such, the record contains undisputed evidence that neither officer took any step to delay the medical responders. Accordingly, Wilkerson's deliberate indifference claim cannot survive.

### Monell Claims

#### Failure to Train and Supervise and for Customs, Policies, and Practices Causing Violations of the Fourth and/or Fourteenth Amendment

Plaintiff claims that Akron police policy and procedures make Akron and Chief Nice liable for and led to the unconstitutional use of deadly force by Officer Danzy and the unconstitutional deprivation of medical rights by deliberate indifference on the part of Officer Danzy and Officer Stewart. "'[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.'" *Garner v. Memphis Police Dep't*. 8 F.3d 358, 363 (6th Cir. 1993) (quoting *Monell,* 436 U.S. at 694). Having found no constitutional violation with respect to the excessive force claim and the deliberate indifference claim, *Monell* claims premised on these violations cannot survive summary judgment.

### State Law Claims

Wilkerson's state law claims of assault and battery and intentional infliction of emotional distress are resolved in the same manner as her federal claims. To the extent that the stop and frisk claim survives, Wilkerson's assault and battery claim survives. However, such a claim is limited to the stop and frisk only. The intentional infliction of emotional distress claim fails as a matter of law as the only remaining claim, the stop and frisk claim, is legally insufficient to support such a claim.

**IV. Conclusion**

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART as detailed herein. Wilkerson's claims tied directly to Danzy's stop and frisk of Thomas survive summary judgment. Judgment is entered in favor of Defendants on all other claims in the complaint.

       IT IS SO ORDERED.


Date: September 21, 2017                                          */s/ John R Adams*
                                                                                 JOHN R. ADAMS
                                                                                 U.S. DISTRICT JUDGE